In the

# United States Court of Appeals
## For the Seventh Circuit

―――――――

No. 06-3140

ELANA M. NEWKIRK, *et al.*,

*Plaintiffs-Appellants,*

*v.*

VILLAGE OF STEGER, *et al.*,

*Defendants-Appellees,*

and

CHARLES TIERI, *et al.*,

*Plaintiffs-Appellees.*

―――――――

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 9077—**Rebecca R. Pallmeyer**, *Judge.*

―――――――

ARGUED JANUARY 7, 2008—DECIDED AUGUST 6, 2008

―――――――

Before POSNER, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Eight employees of the Village of Steger's police department sued the Village under a number of federal statutes, raising claims including race discrimination, sex discrimination, disability discrimination, and retaliation based on political affiliation. See the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962; the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*; the Civil Rights Act, 42 U.S.C.

§§ 1981 and 1983; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. The question before us is whether the parties settled their litigation in August 2005, when they agreed in open court to a settlement agreement subject to the approval of the Village Council.

At a status conference in September, one of the plaintiffs, Scott Osantowski, became concerned about the wording of the settlement to which he had agreed. Among other things, the agreement said that he would be given a paid leave of absence up to his retirement date. The problem was that he was no longer sure whether he would be allowed to retire *at* 20 years of service or *with* 20 years of creditable service, according to the rules of his pension plan. The magistrate judge, recognizing that this was an important issue to Osantowski but not one explicitly addressed in the settlement, asked the defendants to come up with some assurance that Osantowski would get credit for the paid leave of absence. The judge also warned him that he would retire "at" 20 years and "he'll live with that."

Unfortunately, ascertaining what the settlement agreement really meant turned out to be more difficult than anyone anticipated. The pension board asked for an opinion about Osantowski's situation from the Illinois Department of Financial and Professional Regulation (IDFPR), which issued an opaque response that simply reiterated the requirements for creditable time. Rather than taking that as an answer, and in light of several other issues that he felt needed to be ironed out, Osantowski declared that he could not accept the August settlement.

In December 2005, another written version of the settlement was presented to the magistrate judge. This version promised Osantowski a new position instead of paid

leave; the agreement was subject to his receipt of a letter from the State of Illinois confirming that this new position would count as creditable service. There were still other open issues with regard to Osantowski, however, and so no verification letter was sent.

In April 2006, the defendants moved to enforce the August settlement or, in the alternative, the December agreement. A month later, four of the plaintiffs joined this motion (Plaintiffs-Appellees in this court, or the "Settling Plaintiffs"). The remaining plaintiffs (the appellants in this court, to whom we refer as the "Objectors"), including Osantowski, asserted that neither the August nor the December arrangement amounted to an enforceable settlement agreement.

On June 15, 2006, the district court concluded that the August agreement was properly accepted by all parties and that the relevant terms were all memorialized. It therefore ordered the case dismissed with prejudice in accordance with the settlement. Osantowski and the other Objectors appeal from this decision, claiming first that no agreement was reached in August because there was no meeting of the minds, and, in the alternative, if the parties did reach an agreement in August, the December agreement operates as a novation and replaces the August agreement. We find that the district court did not abuse its discretion when it concluded that the parties reached an enforceable agreement in August, and also that it reasonably found that there was no novation in December that would warrant superseding the earlier agreement.

**I**

We review an order enforcing a settlement only for an abuse of discretion. *Dillard v. Starcon Int'l Inc.*, 483 F.3d

502, 506 (7th Cir. 2007). The first question, however, is whether there was any agreement at all among the parties; that is an issue of law that we review *de novo*.

A settlement agreement is a particular kind of contract, and so contract law (here, the law of Illinois) governs. See *Laserage Technology Corp. v. Laserage Laboratories, Inc.*, 972 F.2d 799, 802 (7th Cir. 1992). Although federal law requires that a settlement of a Title VII suit must be knowing and voluntary, see *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 571 (7th Cir. 1995), in the absence of a showing of fraud, duress, or other circumstances suggesting that the settlement was not knowing or voluntary, the district court need not examine the circumstances surrounding the settlement, *Baptist v. City of Kankakee*, 481 F.3d 485, 491 (7th Cir. 2007). Because that showing has not been attempted here, we assume that this settlement was knowing and voluntary and return to Illinois law for the rest of the analysis.

When a "meeting of the minds" question arises, Illinois follows the objective theory of intent. See *Village of South Elgin v. Waste Mgt. of Ill., Inc.*, 810 N.E.2d 658, 670 (Ill. App. Ct. 2004). An Illinois court would therefore look first to the written records, not to mental processes. *Laserage Tech.*, 972 F.2d at 802 (citing *East Richland Educ. Ass'n v. Ill. Educ. Labor Rel. Bd.*, 528 N.E.2d 751, 768-69 (Ill. App. Ct. 1988)). "Secret hopes and wishes count for nothing. The status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves." *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814-15 (7th Cir. 1987). Thus, regardless of other expressions, this court must look first to the written records of what took place to figure out what the parties have done.

**II**

On August 15, 2005, the parties went before the magistrate judge and presented an agreement. There was a "Settlement Checklist," which was completely filled out. In the "Effective Date" space, the parties had filled in "a binding agreement today subject to Board Approval." On the checklist, a handwritten entry specified a "paid leave of absence for Scott Osantowski, to 20 year anniversary (approx. $180,000), date to be vested at 20 years; Osantowski will retire at 20 years of service." Counsel for the plaintiffs read the agreement into the record, and each plaintiff—including Osantowski—affirmed in open court, on the record, that he or she agreed to the terms of the settlement. No question whatsoever was raised with regard to how to count the years of creditable service.

This affirmation is "what the parties express[ed] to each other and to the world . . . ." *Skycom Corp.*, 813 F.2d at 814-15. Under an objective view of intent, which Illinois law follows, this is what we must look to, rather than any hidden doubts or questions that "[the parties] keep to themselves." *Id.* At first blush, therefore, there is little room to argue that the district court was wrong in finding that the parties had at that moment reached a binding agreement, much less a claim that it abused its discretion in so finding.

Nevertheless, Osantowski argues that the uncertainty that remained after the August 15 status conference proved that there was no meeting of the minds on August 15. He asserts that an assurance that his time would be properly credited was a condition precedent to the conclusion of a final agreement, and that he only realized this condition had not been met as a result of later proceedings. This, however, is one of the hidden

doubts to which a court may not refer: on paper, the only condition precedent to the conclusion of a final settlement was agreement by the Village Council. All parties agree that the Council properly gave its consent.

At the time of the settlement it would not have been reasonable for Osantowski to think that the defendants could guarantee what his pension level would be. The level of an officer's pension is determined solely by the pension board, which is independent from the police department, see 40 ILCS 5/3-101, 3-108.3, 3-128, 3-131, and 3-133, and an accounting of creditable time cannot be made before retirement. Osantowski was expecting, in effect, that the IDFPR would make an exception in his case and guarantee *ex ante* what his pension would be. This was not a reasonable expectation. Instead, predictably, the IDFPR did no such thing; it merely reiterated what the definition of creditable time was. This was all that Osantowski could have hoped for. It is unreasonable to think that a promise of creditable service could be a condition precedent to the August agreement (or any other agreement); it should come as no surprise, then, that the agreement—on paper and as expressed by the parties in court—did not reflect such a promise.

Based on the written documents before us, including the transcripts of the open-court affirmation of the settlement, the district court did not abuse its discretion in ordering the enforcement of the August agreement.

## III

Osantowski's alternative argument is that even if the August agreement is valid, the December agreement superseded it by novation. This argument was raised as a

side-issue by the defendants in the district court proceedings: the Objectors, including Osantowski, did not bring it up. Novation is an affirmative contract defense in Illinois. *Phillips & Arnold, Inc. v. Frederick J. Borgsmiller, Inc.*, 462 N.E.2d 924, 929 (Ill. App. Ct. 1984). "Ordinary civil practice does not allow a forfeited affirmative defense whose underlying facts were not developed below to be raised for the first time on appeal." *Day v. McDonough*, 547 U.S. 198, 217 (2006) (citing *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975); *Metropolitan Housing Development Corp. v. Arlington Heights*, 558 F.2d 1283, 1287 (7th Cir. 1977)); see also FED. R. CIV. P. 8(c) (requiring affirmative defenses to be pleaded). Because Osantowski, the one who should have raised novation in the district court, did not do so, we consider the argument forfeited. Nothing in this record suggests that we should reach out and address the merits.

## IV

Ironically, one month before issuing its order enforcing the August agreement, the district court offered Osantowski and the other Objectors the option of an agreed order enforcing the December agreement; they refused. A month later, after the district court found that the August agreement was fully enforceable, Osantowski and the Objectors changed their minds and wanted the December agreement after all.

Buyer's remorse, however, cannot undo a contract to which all parties have given their assent and for which all of the conditions precedent have been fulfilled. We are satisfied that the district court did not commit legal error in finding that the parties reached a valid and binding

contract in August. Therefore the district court did not abuse its discretion in dismissing this case with prejudice based on the settlement agreement.

AFFIRMED

USCA-02-C-0072—8-6-08